UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PHILLIP D., | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION PARTIALLY DENYING DISABILITY BENEFITS** |
| Plaintiff, | |
| v. | Case No. 2:23-cv-00628 |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration, | District Judge Jill N. Parrish |
| Defendant. | Magistrate Judge Daphne A. Oberg |

Plaintiff Phillip D.[1] brought this action for judicial review of the partial denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Mr. D.'s application determined he did not qualify as disabled before April 6, 2022.[3] Mr. D. argues the ALJ erred by failing to properly consider Mr. D.'s self-reported symptoms and by not including limitations related to attendance and productivity in the residual functional capacity determination for this time period.[4] Because the ALJ applied the

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by his first name and last initial only.

[2] (*See* Compl., Doc. No. 5); *see also* 42 U.S.C. §§ 401–434.

[3] (Certified Tr. of Admin. R. ("Tr.") 10–27, Doc. No. 12.)

[4] (*See* Opening Br. 17, Doc. No. 18.)

correct legal standards and his findings are supported by substantial evidence, the undersigned[5] recommends the district judge affirm the Commissioner's decision.

### STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 8.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And
the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment" which is expected to result in death or last for at least twelve consecutive
months.[13]  An individual is considered disabled only if his impairments are so severe, he
cannot perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step
sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful
   activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

5) he has the residual functional capacity to perform other work, considering his
   age, education, and work experience.[15]

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987);
*Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[16]   At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. D. applied for disability insurance benefits under Title II of the Social Security Act[18] in May 2021.[19]   He alleges he became disabled on April 22, 2020.[20]   After an administrative hearing, the ALJ issued a partially favorable decision in May 2023.[21]   The ALJ found Mr. D. became disabled on April 6, 2022 (when Mr. D.'s spinal cord stimulator for neck and back pain was replaced) but was not disabled before that date.[22]

At step two of the sequential evaluation, the ALJ found Mr. D. had the following severe impairments since the alleged onset date: degenerative disc disease of the cervical and lumbar spine, hearing loss, degenerative joint disease of the right shoulder, and degenerative joint disease of the bilateral knees.[23]   The ALJ also found Mr. D. had nonsevere diabetes and nonsevere mental impairments, including a history of bipolar

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 10.)

[20] (*See id.*)

[21] (Tr. 10–27.)

[22] (Tr. 26–27.)

[23] (Tr. 13.)

disorder, depression, mood instability, and ADHD.[24]  At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[25]

The ALJ then found that, before April 6, 2022, Mr. D. had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [Mr. D.] must never be required to climb ladders, ropes, or scaffolds.  He was able to occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl.  He was able to reach overhead with his right upper extremity occasionally.  He was able to tolerate frequent exposure to excessive vibration and was able to tolerate moderate exposure to excessive noise, which is defined as being road level noise.[26]

At step four, based on this RFC and the testimony of a vocational expert, the ALJ found Mr. D. capable of performing his past relevant work as a programmer/analyst until April 6, 2022.[27]  Therefore, the ALJ found Mr. D. not disabled before that date.[28]

Beginning on April 6, 2022, the ALJ found Mr. D. had the RFC to perform sedentary work with the limitations described above, and the following additional limitation: "[Mr. D.] is able to maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal breaks but only in work that consists of detailed but not complex tasks."[29]  With this additional limitation, the ALJ found Mr. D. incapable of performing his past relevant work or any other work in

---

[24] (*See* Tr. 13–16.)

[25] (Tr. 16.)

[26] (Tr. 17.)

[27] (Tr. 22–23.)

[28] (Tr. 26–27.)

[29] (Tr. 23.)

the national economy.[30]  Accordingly, the ALJ found Mr. D. became disabled on April 6, 2022.[31]

The Appeals Council denied Mr. D.'s request for review of the partial denial of his claim,[32] making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Mr. D. challenges the ALJ's RFC assessment for the period before April 6, 2022.[33]  He argues the ALJ failed to adequately explain why limitations related to attendance and productivity were not included in Mr. D.'s residual functional capacity before April 6, 2022.[34]  He asserts the ALJ failed to properly consider Mr. D.'s reports that his pain caused difficulties in concentrating, staying awake, and staying on task.[35] Mr. D. also contends, generally, that the ALJ's RFC determination for this period is not supported by substantial evidence.[36]  As described below, because the ALJ adequately explained his reasoning, he applied the correct legal standards, and his findings are supported by substantial evidence, the ALJ did not err in the RFC determination.

---

[30] (Tr. 25–26.)

[31] (Tr. 26–27.)

[32] (Tr. 1–3.)

[33] (*See* Opening Br. 17–18.)

[34] (*Id.*)

[35] (*Id.* at 17.)

[36] (*Id.* at 18.)

A claimant's RFC reflects the most he can do in a work setting considering his limitations.[37]  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[38]  The ALJ considers all relevant medical and other evidence in the record.[39]

An ALJ must evaluate a claimant's self-reported symptoms using a two-step process.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[40]  Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[41]  In doing so, the ALJ must "examine the entire case record."[42]  The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of symptoms; medication taken and whether it alleviates the symptoms; and other treatment or

---

[37] *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[38] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[39] *See* 20 C.F.R. § 404.1545(a)(3).

[40] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(b).

[41] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. § 404.1529(c).

[42] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. § 404.1529(c).

measures used to relieve the symptoms.[43]  The ALJ also considers whether there are inconsistences between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by medical sources and others.[44]

The ALJ followed this two-step process in evaluating Mr. D.'s self-reported symptoms.  As relevant here, the ALJ acknowledged Mr. D.'s testimony that he experienced persistent neck and back pain, despite multiple surgeries and placement of a spinal cord stimulator—and that the effectiveness of his stimulator had decreased over time.[45]  The ALJ also acknowledged Mr. D.'s testimony that: he could not sit or stand for long periods; if he sat for more than fifteen to twenty minutes, he had back and hip pain; he sat in his recliner eighty-five percent of the day; and he needed to use the bathroom ten to fifteen times per day due to side effects of his medications.[46]  The ALJ found Mr. D.'s impairments could reasonably be expected to cause the alleged symptoms, but Mr. D.'s "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not fully supported prior to April 6, 2022."[47]

The ALJ found the objective medical evidence from this period inconsistent with Mr. D.'s reported symptoms and limitations.[48]  The ALJ noted Mr. D. had been treated

---

[43] SSR 16-3p, 2016 SSR LEXIS 4, at *18–19; *see also* 20 C.F.R. § 404.1529(c)(3).

[44] 20 C.F.R. § 404.1529(c)(4).

[45] (Tr. 17.)

[46] (Tr. 17–18.)

[47] (Tr. 18.)

[48] (*Id.*)

for neck and back pain before the alleged onset date of April 2020, including multiple surgeries.[49]  However, during the period before April 6, 2022, "[p]hysical examinations with treatment providers showed some decreased range of motion in the cervical and lumbar spine, as well as in the right shoulder, but were otherwise normal."[50]  Medical records also showed Mr. D. had "a good result" with shoulder surgery in October 2020.[51]  And Mr. D. had "normal gait, full strength, and intact sensation" during a December 2021 consultative examination.[52]  The ALJ concluded this evidence supported a limitation to sedentary work with restrictions for climbing, stooping, crouching, kneeling, and crawling.[53]  The medical evidence cited and discussed by the ALJ constitutes substantial evidence supporting this finding.

The ALJ then explained why he assessed greater limitations beginning on April 6, 2022.  The ALJ noted Mr. D. had surgery to replace his spinal cord stimulator for neck and pack pain on that date.[54]  The ALJ found that "[f]ollowing the placement of this stimulator, the evidence shows ongoing complaints of pain, and repeated diagnostic imaging shows that he continued to have significant degenerative changes in the

---

[49] (Tr. 18–19.)

[50] (Tr. 20; *see also* Tr. 18–20 (discussing the treatment records from this period in detail).)

[51] (Tr. 20; *see also* Tr. 19 ("The claimant reported that he was doing well after his right shoulder surgery on October 13, 2020." (citing Tr. 693–94, 700, 703)).)

[52] (Tr. 20 (citing Tr. 788–91).)

[53] (*Id.*)

[54] (Tr. 24.)

cervical and lumbar spine."[55]  The ALJ cited the results of two MRIs in May 2022

showing degenerative changes.[56]  The ALJ noted Mr. D. had a procedure in June 2022

to place a nerve block, but a month later he reported he "still had very severe and

persistent pain."[57]  And even after another spinal surgery in August 2022, Mr. D.

"continued to report chronic pain."[58]  Based on this evidence, the ALJ assessed an

additional limitation regarding attention and concentration in the RFC for this period, and

explained this limitation was appropriate "because of decreased concentration

secondary to chronic pain."[59]  Thus, the ALJ adequately explained his reasoning, and

the evidence cited by the ALJ constitutes substantial evidence supporting this finding.

Mr. D. argues the ALJ should have included limitations related to attendance and

productivity in the RFC assessment for entire period after the alleged onset date, based

on Mr. D.'s hearing testimony.[60]  First, Mr. D. points to his testimony that he had

degenerative disc disease and multiple surgeries since 2019; he "can't really si[t], stand

for long periods of time"; he was "at the point now" where he could only sit for fifteen or

---

[55] (*Id.*)

[56] (*Id.* (citing Tr. 1076, 1254).)

[57] (*Id.* (citing Tr. 1073, 1184).)

[58] (*Id.* (citing Tr. 1202, 1326–61).)

[59] (Tr. 25.)  The additional limitation is as follows: "[Mr. D.] is able to maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal breaks but only in work that consists of detailed but not complex tasks."  (Tr. 23.)

[60] (*See* Opening Br. 17, 29–34, Doc. No. 18.)

twenty minutes, and he was in pain constantly.[61]  As an initial matter, this testimony appears to describe Mr. D.'s limitations at the time of the hearing; it is unclear whether his testimony also applied to the period before April 6, 2022.  Regardless, as set forth above, the ALJ expressly considered this testimony in his decision but found Mr. D.'s self-reported symptoms and limitations inconsistent with the medical evidence before April 6, 2022.  Where the ALJ applied the correct legal framework and his findings are supported by substantial evidence, the court will not reweigh the evidence.

Second, Mr. D. points to the following testimony:

> Since my back surgeries, and even before, I could [sic] concentrate a whole lot.  Now, it's just gotten worse.  I find myself dozing off during the day, three or four times a day.  And when I doze off, I may doze off for five, ten minutes up to two, three hours.  If I'm watching a show, I may all of a sudden just turn it off because I feel like I need a nap.  Because I don't have the concentration like I used to.[62]

Again, this testimony appears to primarily describe Mr. D.'s limitations at the time of the hearing.  Further, it is not apparent how it conflicts with the ALJ's findings.  This testimony appears to support the ALJ's determination that Mr. D. had "decreased concentration secondary to chronic pain" after April 6, 2022.[63]  And Mr. D.'s statement that his concentration had "gotten worse" supports the ALJ's determination that a limitation related to attention and concentration was appropriate only for the more recent time period.  As set forth above, the ALJ adequately explained why his assessment was

---

[61] (Tr. 52–53; *see also* Opening Br. 29, Doc. No. 18 (quoting this testimony).)

[62] (Tr. 61; *see also* Opening Br. 29, Doc. No. 18 (quoting this testimony).)

[63] (Tr. 25.)

different for the periods before and after April 6, 2022, based on the medical records. Thus, this testimony does not undermine the ALJ's decision.

Mr. D. also argues the ALJ improperly relied on Mr. D.'s activities of daily living in finding him capable of fulltime work.[64]  Although the ALJ summarized Mr. D.'s self-reported activities of daily living,[65] the ALJ did not find Mr. D. capable of fulltime work based on his activities of daily living.  Instead, the ALJ found Mr. D.'s self-reported symptoms inconsistent with the *medical* evidence for the period before April 6, 2022[66]—and expressly relied on this medical evidence in assessing the RFC.[67]  Thus, Mr. D.'s argument regarding activities of daily living misconstrues the basis for the ALJ's RFC determination.

In sum, the ALJ applied the correct legal standards and adequately explained his reasoning, including explaining why greater limitations were assessed after April 6, 2022.  And the ALJ's findings are supported by substantial evidence in the record, including the extensive medical evidence cited and discussed in the decision. Accordingly, the Commissioner's decision must be affirmed.

## RECOMMENDATION

Because the ALJ applied the correct legal standards and his RFC findings are supported by substantial evidence, the undersigned RECOMMENDS the district judge

---

[64] (*See* Opening Br. 22–24, Doc. No. 18.)

[65] (*See* Tr. 18.)

[66] (*See id.* ("The objective medical evidence does not support the extent of the claimant's alleged symptoms and resulting functional limitations.").)

[67] (*See* Tr. 20.)

AFFIRM the Commissioner's decision.  The court will send this Report and Recommendation to all parties, who are notified of their right to object.  Any objection to this Report and Recommendation must be filed within fourteen days of service.[68] Failure to object may be considered a waiver of objections.

DATED this 12th day of July, 2024.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[68] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).